UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PERNAIL MCDOUGLE,

                Plaintiff,

v.                                                    Case No. 21-cv-1447-pp

CAPTAIN CUNNINGHAM,
and LIEUTENANT EMANUELE,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Pernail McDougle, a pretrial detainee at Milwaukee County Jail[1] who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants impermissibly kept him in administrative segregation for several weeks. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h).

---

[1] When the plaintiff filed his complaint, he was in the Milwaukee County Jail. Dkt. No. 1 at 9. On June 6, 2022, the plaintiff provided a new address on Locust Street in Milwaukee. Dkt. No. 7. The Wisconsin Circuit Court Access Program shows, however, that the plaintiff was taken into custody. State v. McDougle, Case No. 2021CF003224 (Milwaukee County Circuit Court) (available at https://wcca.wicourts.gov). The Milwaukee County Jail's Inmate Locator web site shows that the plaintiff is in custody in the jail. http://www.inmatesearch.mkesheriff.org/ (last visited September 25, 2022).

The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On December 28, 2021, the court ordered the plaintiff to pay an initial partial filing fee of $40.31. Dkt. No. 5. The court received that fee on January 11, 2022. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

    A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison,

668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The complaint alleges that on July 31, 2021, the plaintiff was placed on suicide watch because he felt suicidal. Dkt. No. 1 at 3. He says that he should have been returned to general population within forty-eight hours because he no longer expressed suicidal thoughts. Id. He alleges, however, that unnamed

jail staff kept him in administrative segregation for an additional thirty-seven days. Id. at 2–3. Jail staff told the plaintiff he had to remain in segregation because of an incident report noting the plaintiff's threat to kill a police officer before he was brought into custody at the jail. Id. The plaintiff says he never saw this report, and no one provided him a copy. Id. at 3.

The plaintiff alleges he wrote to the captain's office several times requesting the incident report or a detention order explaining why he was being held in segregation. Id. at 3–4. Each time, unspecified "Lieutenants and Captains" told him they did not have the information and recommended he request the information from "the police districts." Id. at 4. The plaintiff attached copies of the requests he sent through the jail. Dkt. No. 1-1. These reports confirm the plaintiff's allegations and show that the jail informed the plaintiff he was kept on administrative segregations "due to [his] charges" or "based on information provided to [jail] administration by MPD in regards to threats to assault law enforcement prior to [his] arrest." Id. at 2–4. The plaintiff says he wrote to "the police district who were [*sic*] responsible for arresting [him] and bringing [him] to the Milwaukee County Jail," but officials there responded that "they had no such report." Dkt. No. 1 at 4.

The plaintiff accuses the unnamed lieutenants and captains of abusing their discretion and authority by keeping him in administrative confinement in violation of "Wisconsin Statute and State code." Id. He insists that detainees who have not threatened jail officers or staff, have not violated any jail rules and are not a threat to jail staff "should [not] be judged by the county jail

4

Lieutenants and Captains" or placed in segregation "because they did not like the type of crime the detainee suppose had [*sic*] committed." Id. at 4–5. He says the lieutenants and captains do not have the authority to pick and choose which detainees charged with homicide go into administrative segregation and which others do not. Id. at 5. He asserts that the decision to keep him in administrative segregation violated his rights under the Eighth and Fourteenth Amendments. Id. at 2, 5–6.

The plaintiff singles out defendants Captain Cunningham and Lieutenant Emanuele and says they placed him in administrative segregation without probable cause. Id. at 6. He asserts the defendants were "delib[e]rately being indifferent to what their guidelines instruct them about placing detainees in Administrative Segregation." Id. He says he has since suffered from anxiety, sleep deprivation, distress and mental anguish. Id. He complains that "if this Administration can abuse their authority in placing [him] in solitary confinement without probable cause, what's to keep them from hanging [him] in a cell in Administrative Segregation if they chose to do so[?]" Id.

The plaintiff asks the court to "Summon the Defendants to give an account of what gave them the authority to confine [him] inside the Administrative Segregation for several weeks without justif[i]able probable cause and without operating within the Wisconsin Statute and City Code of regulations." Id. at 7. He also seeks $200,000 in compensatory damages to cover the costs of his "therapist and psychologist services that [he] may have to have throughout the rest of [his] life for the abuse" he allegedly experienced. Id.

C.  Analysis

The plaintiff is correct that, as a pretrial detainee, the jail cannot punish him for the crime with which he is charged. Rapier v. Harris, 172 F.3d 999, 1002 (7th Cir. 1999) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). But the government may punish a pretrial detainee for his own misconduct that occurs while in pretrial confinement. Id. at 1003 (citing Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996); Collazo–Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 318 (1st Cir. 1995)). The jail also may place "certain restrictions on [a detainee's] liberty," so long as those measures "are reasonably calculated to effectuate the pretrial detention." Id. (citing Bell, 441 U.S. at 537). As the Seventh Circuit explained, the government may have "'legitimate operational concerns [that] require administrative measures that go beyond those that are, strictly speaking, necessary to ensure that the detainee shows up for trial.'" Id. (quoting Bell, 441 U.S. at 540). "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Bell, 441 U.S. at 539. These restraints are allowed "as long as they are 'reasonably related' to the effective management of the confinement facility." Rapier, 172 F.3d at 1003.

Whether a jail imposes a restriction as punishment or for operational reasons makes an important difference. If the jail chooses to punish a pretrial detainee for his actions at the jail, the Fourteenth Amendment's Due Process Clause requires that the detainee receive "some sort of procedural protection." Id. at 1005; see Higgs v. Carver, 286 F.3d 437, 438 (7th Cir. 2002). Such

protection includes notice and an opportunity to be heard. See Higgs, 286 F.3d at 438 (citing Rapier, 172 F.3d at 1004–05). But in a situation where the jail places a detainee in segregation for operational reasons, "no process is required." Higgs, 286 F.3d at 438. For example, if a pretrial detainee is "placed in segregation to protect himself from other prisoners, or to protect jail staff from his violent propensities," then the jail need not provide the detainee procedural protections (notice and a hearing) beforehand. Id. (citing Bell, 441 U.S. at 547).

The plaintiff says he was kept in administrative segregation for thirty-seven days. He alleges that the jail had no probable cause to keep him in segregation and that no one gave him a report or an order justifying his continued detention. He asserts that defendants Cunningham and Emanuele, as well as unnamed captains and lieutenants, kept him in segregation because he has been charged with homicide. But he also says jail staff informed him he was kept in segregation because he had threatened to assault or kill police officers before being detained at the jail.

The reports attached to the complaint are ambiguous. Twice the jail informed the plaintiff he was kept in administrative segregation "due to [his] charges." Dkt. No. 1-1 at 2–3. That sounds like the jail was impermissibly punishing the plaintiff based on his charges and not based on his conduct while in detention. If so, the jail's actions would constitute a violation of the plaintiff's rights, which no amount of process would cure. On the other hand, the jail later told the plaintiff that he was kept in administrative segregation

because the jail received information that the plaintiff had threatened "to assault law enforcement prior to [his] arrest." Id. at 4. If the jail placed the plaintiff in segregation because staff believed he had "violent propensities," it is possible that he was not entitled to process the plaintiff before being continued in segregation. Higgs, 286 F.3d at 438.

The complaint and exhibits provide support for a conclusion that the jail both may have and may not have violated the plaintiff's due process rights by keeping him in administrative segregation for an extended time. It is not appropriate for the court to decide which of these conclusions is correct at screening. The court must "'construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor.'" Belongie v. Kluenker, No. 20-CV-1742-PP, 2021 WL 3032862, at *2 (E.D. Wis. July 19, 2021) (quoting Guitron v. Paul, No. 11-C-447, 2011 WL 2649979, at *1 (E.D. Wis. July 6, 2011), aff'd, 675 F.3d 1044 (7th Cir. 2012)). Under that standard, the court concludes that the plaintiff's complaint states a Fourteenth Amendment claim against defendants Cunningham and Emanuele, who he says are responsible for his extended time in segregation.

The plaintiff also suggests that other captains or lieutenants may be responsible for his segregation. Because there may be other responsible parties whose names the plaintiff does not know, the court will add a "John Doe Captains or Lieutenants" placeholder to the docket. See Donald v. Cook Cty. Sheriff's Dep't, 95 F.3d 548, 555–56 (7th Cir. 1996) (noting that courts are charged with assisting *pro se* litigants who state allegations against individuals

8

not necessarily named in the caption of their complaint). In a later order, the court will give the plaintiff instructions for identifying the unknown defendant or defendants.

The plaintiff also asserts that his administrative confinement violated his rights under the Eighth Amendment. He asserts that the captains and lieutenants were deliberately indifferent to their guidelines under state law or jail policy. Because the plaintiff was a pretrial detainee at the time of the events described in the complaint, however, the Fourteenth Amendment—not the Eighth Amendment—governs this claim. See Hardeman v. Curran, 933 F.3d 816, 821–22 (7th Cir. 2019) (citing Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015)). Under the Fourteenth Amendment, the plaintiff must show that the conditions of his confinement were objectively unreasonable; that is, he must show that the conditions were not "'rationally related to a legitimate non-punitive governmental purpose'" or that they were "'excessive in relation to that purpose.'" Hardeman, 933 F.3d at 822 (citing Kingsley, 576 U.S. at 397).

The complaint does not provide enough information for the court to conclude that the conditions of the plaintiff's confinement in segregation may have been objectively unreasonable. The plaintiff does not describe the conditions of his administrative segregation. He alleges only that he was kept in segregation longer than he should have been. Whether he was kept in segregation for a non-punitive purpose is a factor the court must consider in deciding his Fourteenth Amendment due-process claim. Because that analysis necessarily will include the plaintiff's allegations related to this purported

9

Eighth/Fourteenth Amendment claim, and because the plaintiff has not provided sufficient facts about the deliberate indifference claim, the court will not permit him to proceed separately on this claim. He may proceed only on his Fourteenth Amendment due process claim.

The plaintiff also alleges that the defendants' actions violated guidelines for pretrial detainees under either state law or prison policy. A violation of state law or policy does not infringe a constitutional right and does not state a claim under §1983. See Swarthout v. Cooke, 562 U.S. 216, 221–22 (2011) (state statutes); Pulera v. Sarzant, 966 F.3d 540, 551 (7th Cir. 2020) (jail policy). The court will not allow the plaintiff to proceed on a claim asserting a violation of state law or policy.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that the clerk must **ADD** "John Doe Captains or Lieutenants" to the docket as a defendant.

Under an informal service agreement between Milwaukee County and this court, the court will electronically transmit a copy of the complaint and this order to Milwaukee County for service on Captain Cunningham and Lieutenant Emanuele at the Milwaukee County Jail. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within 60 days.

10
Case 2:21-cv-01447-PP   Filed 09/28/22   Page 10 of 13   Document 8

Because the plaintiff does not know the names of the John Doe defendant(s), he must use discovery to learn their names. Once all named defendants have responded to the plaintiff's complaint, the court will issue a scheduling order setting deadlines for the completion of discovery and for filing dispositive motions. The order also will set a deadline for the plaintiff to identify the Doe defendant(s) and will provide the plaintiff additional information for identifying the Doe defendant(s). **The plaintiff should not start the process for identifying the Doe defendant(s) until the court has issued a scheduling order.**

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$309.69** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Milwaukee County Sheriff Earnell Lucas, 821 W. State Street, Room 107, Milwaukee, WI 53233 and to Dennis Brand, 821 W. State Street, Room 224, Milwaukee, WI 53233.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

advised of his address may result in the court dismissing the case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 28th day of September, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**