UNITED STATES DISCTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PERNAIL MCDOUGLE,

    Plaintiff,

v.                             Case No. 21-CV-1447

TERINA CUNNINGHAM, et al.,

    Defendants.

## DEFENDANTS' PROPOSED FINDINGS OF FACT
## IN SUPPORT OF SUMMARY JUDGMENT

Defendants, Terina ("Cpt. Cunningham"), Anthony Emanuele ("Lt. Emanuele"), and Cassandra Joshua ("Lt. Joshua"), by their attorneys the Milwaukee County Office of Corporation Counsel and Assistant Corporation Counsel Nelson W. Phillips III, hereby submit the following proposed findings of fact in support of their motion for summary judgment pursuant to Fed. R. Civ. P. 56(c)(1)(A) and Civil Local Rule 56(b)(1)(C) (E. D. Wis. 2023).

**A.**     **The Parties.**

1. Plaintiff Pernail McDougle is a former pretrial detainee of the Milwaukee County Jail (the "Jail"). From July 31, 2021 through March 8, 2022, Mr. McDougle was housed at the Jail until his release on March 8, 2022, after which he was transferred to custody of the Wisconsin Department of Corrections. (Duckert Decl. ¶ 6).

2. Mr. McDougle's claims in his Complaint in this case are confined to the period between August 4, 2021 through September 11, 2021 (hereinafter "the relevant time period") during which Mr. McDougle was classified and housed at the Jail as an Administrative

Segregation (or "Ad-Seg") occupant and housed on Pods 4D and 4B. (ECF 1, Duckert Decl. ¶ 4; McDougle Dep. Tr. Pg. 30, 12-18).

3. At all times during the relevant time period, Defendant Terina Cunningham ("Captain Cunningham" or "Cpt. Cunningham") was employed by the Milwaukee County Sheriff's Office (the "MCSO") as a corrections Captain assigned to the Jail. (Cunningham Decl. ¶ 2).

4. At all times during the relevant time period, Defendant Anthony Emanuele ("Lieutenant Emanuele" or "Lt. Emanuele") was employed by the MCSO as a corrections Lieutenant at the Jail. (Emanuele Decl. ¶ 2).

5. At all times during the relevant time period, Defendant Cassandra Joshua ("Lieutenant Joshua" or "Lt. Joshua") was employed by the MCSO as a corrections Lieutenant at the Jail. (Joshua Decl. ¶ 2).

6. During the relevant time period, Captain Cunningham, Lt. Emanuele and Lt. Joshua were all assigned to work at the Jail as Jail supervisors. (Cunningham Decl. ¶¶ 2,6; Emanuele Decl. ¶¶ 4,7, Joshua Decl. ¶¶ 2,8).

**B.  On July 29, 2021, The Milwaukee Police Department reported to the MCSO that Mr. McDougle was wanted for a homicide and made threats to "kill a cop."**

7. On July 29, 2021, at approximately 7:56 a.m., the Milwaukee County Sheriff's Office (the "MCSO") received a communication from the Milwaukee Police Department that MCSO Lieutenant Brandy Lester summarized as follows in an email to other MCSO Courts Division personnel: "Pernail Mcdougle M/B 11/07/996 – Subject is wanted for a homicide that just happened this morning and he made statements that he will continue to kill until he is caught – his phone has been pinged by MPD in the downtown area." (Lester Decl. ¶ 5; Exh. 1001, Pg 26-28).

8. On July 29, 2021, at approximately 8:01 a.m., Lt. Lester sent another email to MCSO's Law Enforcement Analytics Division ("LEAD") with the following updated information she received from MPD: "MPD notified us that there is a suspect in our area that wants to "kill a cop." Subject is in the area of the CJF according to MPD. His phone is pinging within 200 feet of the complex. Subject has an open warrant for Homicide." (Lester Decl. ¶ 6; Exh. 1001, Pg 25-26).

9. On July 29, 2021, at approximately 8:03 a.m., Lt. Lester forwarded the emails she sent at 8:01 a.m. and 8:03 a.m. to the MCSO investigative divisions and MCSO supervisors and command staff in the Courthouse and the Jail to inform them of the possible danger presented by Mr. McDougle. (Lester Decl. ¶ 7; Exh. 1001, Pg 24-25).

10. Lt. Lester sent the emails described in ¶¶ 9 and 10 of Defendants' Proposed Findings of Fact the safety and security of all MCSO Deputies, Corrections Officers, and Jail staff working in either the Courthouse or in and around the Jail. Pursuant to the information received from MPD, it was entirely possible that MCSO Deputies and corrections staff could encounter Mr. McDougle on the morning of July 29, 2021, in the area of the Courthouse or the Jail and they needed to be aware of the reported threat to their safety. (Lester Decl. ¶ 8).

11. Further, MCSO Deputies and MCSO corrections staff were also both dressed in the same uniform and could have been potential targets of the reported harm. MCSO corrections staff are also traditionally unarmed, thus they needed to be aware of the potential threat Mr. McDougle posed and take precautions in case they encountered Mr. McDougle. (Lester Decl. ¶ 9).

12. On July 29, 2021, at approximately 8:34 a.m., Lt. Lester sent an email to MCSO command staff and supervisors in the Courthouse and the Jail that relayed a final update from MPD that Mr. McDougle had been taken into custody; Milwaukee County Jail Commander Aaron Dobson sent an email at 8:47 a.m to all Jail command staff and supervisors informing them of the same information. (Lester Decl. ¶ 7; Exh. 1001, Pg 25).

C. **On July 31, 2021, Mr. McDougle was booked into the Jail and Wellpath immediately placed him on suicide watch.**

13. On July 31, 2021, Mr. McDougle was booked into the Jail as a pretrial occupant on charges of First Degree Intentional Homicide, Burglary of a Dwelling, and Aggravated Battery - Elderly. (Duckert Decl. ¶¶ 7,8; Exh. 1001, Pg 6-8).

14. On July 31, 2021, during the intake and booking processes, employees of the Jail's contracted medical and healthcare provider, Wellpath, Inc. ("Wellpath"), determined that Mr. McDougle was an "imminent threat of physical injury to himself," and explained as a basis for a "suicide watch" referral to Jail administrators that, "pt (patient" answered yes to multiple suicide questions. Has attempted suicide in the past. Pt states he is being accused of homicide & doesn't remember, so why even live." (Duckert Decl. ¶ 8; Exh, 1002).

15. Mr. McDougle was housed on Pod 4D from July 31, 2021 through August 4, 2021, on suicide watch, and monitored every day four times per hour pursuant to MCSO Suicide Watch policy. (Duckert Decl. ¶ 9; Exh. 1002).

D. **Mr. McDougle was cleared from suicide watch and re-classified as an Administrative Segregation occupant at the Jail.**

16. On August 4, 2021, Wellpath employees cleared Mr. McDougle from his suicide watch placement and he was re-classified by the Jail's Classification Unit staff pursuant to their

determination of an appropriate housing assignment and the Jail's operational needs. (Duckert Decl. ¶ 16; Exh. 1002).

17. On August 4, 2021, Classification Unit Corrections Officer Kelle Honzik ("CO Honzik"), whose duty was as part of the Classification Unit at the Jail to classify Jail occupants in an appropriate housing unit pursuant to his or her classification profile and the Jail's operational needs, classified Mr. McDougle as an Administrative Segregation occupant and placed him in cell 21 on housing unit Pod 4D, a restrictive housing unit. (Duckert Decl. ¶ 17; Honzik Decl. ¶ 5).

18. The basis for CO Honzik's determination to classify Mr. McDougle as an Ad-Seg occupant was her conversation with Lt. Joshua on August 4, 2021 regarding Mr. McDougle's threats to kill a law enforcement officer (on July 29, 2021) outside the Jail. (Honzik Decl. ¶ 5; Joshua Decl. ¶ 11; Exh. 1001).

19. Lt. Joshua, as a result of the information regarding Mr. McDougle's threats to kill a law enforcement officer, instructed CO Honzik to classify Mr. McDougle as an Administrative Segregation occupant an operational safety measure to protect both Jail staff and occupants until he could be trusted to follow Jail rules in a general population housing unit. (Honzik Decl. ¶ 6; Joshua Decl. ¶ 12).

20. Lt. Emanuele did not have any involvement in, or knowledge about, Mr. McDougle's classification as an Ad-Seg occupant at the Jail. (Emanuele Decl. ¶¶ 5-6, 8).

21. Mr. McDougle's classification as an administrative segregation occupant at the Jail was not the result of any punishment or discipline for a violation of Jail rules, nor was it the result of Mr. McDougle's criminal charges. (Duckert Decl. ¶ 18, 75; Honzik Decl. ¶ 8).

22. Administrative Segregation at the Jail is not a punishment, nor does it require that an occupant at the Jail who has been classified as an Administrative Segregation occupant be restricted in the privileges he or she may enjoy at the Jail. (Duckert Decl. ¶ 19; Honzik Decl. ¶ 8).

23. Administrative Segregation is a custody status at the Jail that is based upon the we that a Jail occupant presents to other occupants and Jail staff. (Duckert Decl. ¶ 20; Honzik Decl. ¶ 9).

24. Administrative Segregation status at the Jail is the separation of an inmate who is prone to escape or assault staff or other inmates, or one who is mentally deficient, in need of medical isolation or infirmary status, and it is a non-punitive classification process. (Duckert Decl. ¶ 21; Honzik Decl. ¶ 10).

25. Administrative Segregation status at the Jail includes non-punitive, but segregated single cell occupancy, confinement of an occupant to his or her cell or other designated area to ensure personal safety and security within the Jail. The single cells are located in housing units at the Jail that are adjacent to other single occupancy cells. (Duckert Decl. ¶ 22; Honzik Decl. ¶ 11).

26. Ad-Seg classified occupants are housed with similarly classified Ad-Seg occupants in Pods 4B and 4D. However, because occupants classified as disciplinary status occupants are also housed in Pods 4B and 4D, simultaneously, Ad-Seg occupants may experience restrictions to their confinement privileges because of the restrictions attached to disciplinary occupants. (Duckert Decl. ¶ 23, 24).

27. Ad-Seg occupants may receive less time out of their cell and limitations to only hygiene items on the commissary list because they are housed with disciplinary status occupants

housed on Pods 4B and 4D. These limitations are by and large the only differences between the privileges an Ad-Seg occupant possesses as opposed to a general population occupant house in general population housing units at the Jail. (Duckert Decl. ¶ 25).

28. Pods 4B and 4D are structured much like the general population housing units at the Jail in that the cells located in pods 4B and 4D are identical to general population cells (i.e. the cells are equipped with a sink, a toilet, a table and chair, and a bed), and they have a dayroom for occupants to use during their time out of their cells. (Duckert Decl. ¶ 26).

29. In August 2021 and September 2021, occupants housed on Ad-Seg classification status were permitted more time out of their cells than disciplinary segregation occupants, and may have received as much time out of their cells as occupants housed in general population housing units under some circumstances. (Duckert Decl. ¶ 27).

30. Ad-Seg occupants are also permitted to clean their cells up to three times per day by using the cleaning supplies brought to every housing unit after mealtimes for Breakfast, Lunch and Dinner at the Jail. (Duckert Decl. ¶ 28).

31. Ad-Seg occupants, like general population occupants at the Jail, are permitted to use the telephones located in 4D and 4B to call anyone they choose (unless restricted by a Court's order), they are permitted to full mail privileges and video visits, and they are permitted access to hygiene items on the commissary list. (Duckert Decl. ¶ 29).

32. By contrast, occupants on disciplinary status at the Jail are not permitted to access any commissary items, they aren't permitted video visits, and their time out of their cell is more restricted than occupants classified as Ad-Seg occupants. (Duckert Decl. ¶ 30).

33. There is no housing unit at the Jail that contains a cell or cells that are segregated from other cells such that the occupant housed within the cell is isolated from human contact. (Duckert Decl. ¶ 31).

34. Ad-Seg occupants at the Jail are allowed access to programs and services offered to all occupants at the Jail, including, but not limited to, occupant telephones, family visitation, educational programming appropriate to the inmate classification, access to commissary services, library and law library services, social services, faith-based guidance, counseling and religious services, recreation activities and exercise, and social and professional visits. (Duckert Decl. ¶ 32).

35. Occupants placed on Administrative Segregation status are reviewed every week by Classification Unit corrections officers for a potential change in their classification status. Once the review is performed, the Classification Unit officer forwards his or her review to the Classification Captain who will then make a final determination whether the occupant's classification status will or will not change. (Duckert Decl. ¶ 33; Honzik Decl. ¶ 12).

36. During the relevant period of time Cpt. Cunningham was the Classification Captain at the Jail whose duty, in part, was to review the classification status of occupants who were classified as Administrative Segregation occupants. (Cunningham Decl. ¶ 4).

37. On August 7, 2021, the Classification Unit assigned Mr. McDougle to Pod 4B subpod A (Cell 1). Mr. McDougle was assigned to Pod 4B subpod A (Cell 1) through August 31, 2021. (Honzik Decl. ¶ 14; Exh. 1003).

38. On August 12, 2021, MCSO Corrections Officer Richard Zawatzke interviewed Mr. McDougle as part of the Administrative Segregation review process at the Jail. CO

Zawatzke informed Mr. McDougle that he was placed on Administrative Segregation because he made threats to law enforcement. (Cunningham Decl. ¶ 11; Exh. 1001, Pg. 5).

39. On August 14, 2021, Cpt. Cunningham reviewed Mr. McDougle's Administrative Segregation status, including CO Zawatzke's August 12, 2021 Ad-Seg review notes, and made the determination that Mr. McDougle would remain on Ad-Seg status. Cpt. Cunningham annotated Mr. McDougle's Classification file stating that he ". . . will remain on Ad-Seg" and ". . . will have to show stable behavior to be removed." (Cunningham Decl. ¶ 12; Exh. 1001).

40. On August 19, 2021, Cpt. Cunningham reviewed Mr. McDougle's Administrative Segregation status and made the determination that Mr. McDougle would remain no Administrative Segregation status. Cpt. Cunningham annotated Mr. McDougle's Classification file stating that he ". . . will remain on Ad-Seg" and ". . . will have to show a pattern of stable behavior to be removed." (Cunningham Decl. ¶ 13; Exh. 1001, Pg. 5).

41. On August 21, 2021, Mr. McDougle violated Jail Rule J701 (Being in an Unauthorized Area) by using the telephone pin number of another Jail occupant. As a result of this Jail rules violation, Mr. McDougle received a disciplinary sanction in the form of loss of time out of his cell on August 22, 2021. (Duckert Decl. ¶ 34; Cunningham Decl, ¶ 15; Exh. 1004).

42. On August 24, 2021, CO Riley Cornog interviewed Mr. McDougle as part of the Administrative Segregation review process at the Jail. CO Cornog noted that Mr. McDougle was the subject of an incident at the Jail the result of which caused him to lose time out of his cell has a punishment for violating Jail rules. CO Cornog noted that Mr.

McDougle requested to be removed from Administrative Segregation status. (Cunningham Decl. ¶ 14; Exh. 1001, Pg. 5).

43. On August 25, 2021, Cpt. Cunningham reviewed Mr. McDougle's Administrative Segregation status, including CO Cornog's August 24, 2021 Ad-Seg review notes, and made the determination that Mr. McDougle would remain on Administrative Segregation status. Cpt. Cunningham annotated Mr. McDougle's Classification file stating that he ". . . will remain on Ad-Seg" and ". . . will have to show stable behavior to be removed." (Cunningham Decl. ¶¶ 15-16).

44. On September 4, 2021, Lt. Telia Evans reviewed Mr. McDougle's Administrative Segregation status and made the determination that Mr. McDougle would remain on Administrative Segregation status. Lt. Cunningham annotated Mr. McDougle's Classification file stating that he ". . . will remain on Ad-Seg" and ". . . will have to show stable behavior to be removed." Mr. McDougle's Classification file was annotated as such on September 4, 2021. (Cunningham Decl. ¶ 19; Exh. 1001, Pg. 4).

45. On September 9, 2021, CO Christopher Kindschi interviewed Mr. McDougle as part of the Administrative Segregation review process at the Jail. CO Kindschi noted that Mr. McDougle wanted to be removed from his Administrative Segregation status, and that he had been the subject of one incident that resulted in his loss of time out of his cell as a punishment for violating Jail rules. CO Kindschi also noted that Mr. McDougle, during that Administrative Segregation interview, didn't deny what he said. (Cunningham Decl. ¶ 21; Exh. 1001, Pg. 4).

46. On September 10, 2021, Cpt. Cunningham reviewed Mr. McDougle's Administrative Segregation status, including CO Kindschi's September 9, 2021 Ad-Seg review notes, and

noted that Mr. McDougle could be removed from Administrative on September 8, 2021 and that Mr. McDougle stated that "he will comply with all rules" and that he "has shown stable behavior having only received 1 minor violation since coming into custody." (Cunningham Decl. ¶ 22).

47. On September 11, 2021, the Classification Unit removed Mr. McDougle from Administrative Classification status and assigned him to Pod 3B (cell 34), a general population housing unit at the Jail. (Cunningham Decl. ¶¶ 23-25; Exh. 1001; Exh. 1003).

E. **Mr. McDougle's grievances and requests for information regarding his Administrative Segregation classification.**

48. During the month of August 2021, Mr. McDougle used the Jail's grievance system on multiple occasions to request information about the reason he was classified as an Administrative Segregation occupant at the Jail, and to request that he be removed from Administrative Segregation and assigned to a general population housing unit. (Duckert Decl. ¶¶ 35-36; Exh. 1005).

49. On August 23, 2021, Mr. McDougle submitted Grievance No. 39436 stating, "I have been in adsag (ad seg) for 19 days what do I have to do to get to go to population" (Duckert Decl. ¶ 37; Exh. 1005).

50. On August 24, 2021, Mr. McDougle submitted Grievance No. 39519 stating, "This is to capt Cunningham my name is pernail mcdougle I have been on administration segregation for 21 days I have been asked twice if I wanted to go to gp said yes I have been a model inmate there was a guy in here for spitting on a police officer and was only here for 15 days I just want to know what I have to do to to gp." (Duckert Decl. ¶ 38; Exh. 1005).

51. On August 25, 2021, CO Honzik responded to Mr. McDougle's Grievance No. 39436 stating, "Ad Seg reviews were completed this week. You were NOT taken off yet. Next Wednesday is the next review" (Duckert Decl. ¶ 39; Exh. 1005).

52. On August 25, 2021, CO Honzik responded to Mr. McDougle's Grievance No. 39519 stating, "Ad Seg reviews have been completed and you were NOT removed at this time." (Duckert Decl. ¶ 40; Exh. 1005).

53. On August 25, 2021, Mr. McDougle submitted an appeal to his Grievance No. 39519 in asked, "Why wasn't I removed [sic] I have not been disruptive [sic] I have been a model image [sic] I don't bother nobody." (Duckert Decl. ¶ 41; Exh. 1005).

54. On August 26, 2021, Mr. McDougle submitted Grievance No. 39822 in which he stated, "This is 2 capt Cunningham my name is pernail mcdougle I have been a model inmate I just found out that my wife has covid and I need more time so I can talk to her she is all I got so please find it in your heart to let me got to gp I promise u will not have a problem out of me I am not a problem inmate." (Duckert Decl. ¶ 42; Exh. 1005).

55. On August 26, 2021, CO Honzik responded to Mr. McDougle's Grievance No. 39822 stating, "Wednesdays are Ad Seg reviews." (Duckert Decl. ¶ 43; Exh. 1005).

56. On August 28, 2021, Cpt. Cunningham responded to Mr. McDougle's appeal of his Grievance No. 39519 in response to his question asking why he was not removed from Administrative Segregation status and stated, "Occupant McDougle, Administrative Segregation Reviews are conducted on a weekly basis. There are multiple factors in you being removed from Administrative Segregation, to include but not limited to statements made, behavior and rule violations. You received a rule violation on 08/21/2021. Continue your stable behavior in order to be removed." (Duckert Decl. ¶ 45; Exh. 1005).

57. On August 30, 2021, Mr. McDougle appealed Cpt. Cunningham's response to his appeal of his Grievance No. 39519 and asked, "To capt Cunningham or Cpt. evans Why wasn't I taken off administrative segregation this week I have not caused no problems since I have been here for 26 days I feel I should be given a chance to be gp I beg u please give me a chance u will not have a problem out of me I promise." (Duckert Decl. ¶ 46; Exh. 1005).

58. On August 31, 2021, Cpt. Cunningham responded to Mr. McDougle's second appeal of his Grievance No. 39519 stating, "Occupant McDougle you were provided a response for this same issue on 08/28/2021. The response remains the same." (Duckert Decl. ¶ 49; Exh. 1005).

59. On August 31, 2021, Mr. McDougle attempted to appeal his Grievance No. 39519 a third time stating, "Please please let me got to general population this week I need more time out to talk to my wife who is in ICU with covid so please please I promise u will not have a problem out of me please." (Duckert Decl. ¶ 50; Exh. 1005).

60. On September 6, 2021, Captain Cunningham responded to Mr. McDougle's third attempt to appeal his Grievance No. 39519 stating, "Occupant McDougle, your request will be considered when reviews are completed this week." (Duckert Decl. ¶ 53; Exh. 1005).

61. On September 11, 2021, Cpt. Cunningham authorized Mr. McDougle's re-classification as a general population occupant at the Jail on September 11, 2021. (Duckert Decl. ¶ 57; Cunningham Decl. ¶ 25; Honzik Decl. ¶ 15; Exh. 1003; Exh. 1005).

62. On September 11, 2021, Mr. McDougle submitted Grievance No. 41809 stating, "Hello capt Cunningham i would like to thank u for taking me off death row and changing me from a beet to a pumpkin as I told will not have a problem out of me." (Duckert Decl. ¶ 58; Exh. 1005).

63. Lt. Montano, during the relevant period of time, supervised operations within the Jail's Special Projects Unit. In part, it was the Special Projects Unit's duty to receive, distribute to the appropriate division within the MCSO, and to respond to occupant grievances when necessary and appropriate. . (Duckert Decl. ¶ 60)

64. MCSO Office Administrator Chastity Vinson ("Office Administrator Vinson" or "Ms. Vinson") is a civilian employee of the MCSO. During the relevant period of time, Ms. Vinson assisted Lt. Montano with supervision of operations within the Jail's Special Projects Unit, including the issuance of responses to occupant grievances. (Duckert Decl. ¶ 61)

65. Ms. Vinson is an MCSO employee, but she is not a ranking officer in the MCSO and she does not have authority to classify or reclassify an occupant at the Jail. Her duties as a MCSO Office Administrator are clerical only. (Duckert Decl. ¶ 62)

66. Corrections staff assigned to the Special Projects Unit at the rank of Lieutenant, and above, may make recommendations related to occupant classification but they cannot assign to an occupant a classification status at the Jail. (Duckert Decl. ¶ 63)

67. Further, although it is the duty of Special Projects Unit corrections staff to respond to occupant grievances the occupant may appeal their responses. Occupant grievances at the Jail are addressed pursuant to the Jail's occupant grievance procedure which is found in the Jail Handbook which was provided to Mr. McDougle when he was booked into the Jail. (Duckert Decl. ¶¶ 64-66; Exh. 1006)

68. If the occupant receives a response to his or her grievance appeal but they are still not satisfied by the response, the occupant may appeal the response once more to Jail command

staff, including the Director of the Jail or his or her designee. The appeal response from the Jail Director is final. (Duckert Decl. ¶ 67; Exh. 1006)

69. In September and October 2021, Mr. McDougle submitted multiple grievances to the Jail requesting copies of the report from MPD that stated he threatened to kill a law enforcement officer. (Duckert Decl. ¶ 68; Exh. 1005)

70. Mr. McDougle submitted to the Jail Grievance Nos. 40101, 41001, 441197, 42169, 42175, 42998, 43432, 43677,44696, in which he requested copies of the MDP report regarding his threat to kill an officer, and the grievances in which asked the reason he had been classified as an Ad-Seg occupant. . (Duckert Decl. ¶ 69; Exh. 1005)

71. Lt. Montano, both after September 11, 2021 and after Mr. McDougle was re-classified as a general population occupant, responded to Mr. McDougle's Grievance Nos. 42998 and 43432 by stating that his classification as an Administrative Segregation occupant was due to the severity of his charges. (Duckert Decl. ¶ 70; Exh. 1005)

72. Lt. Montano's responses to Mr. McDougle's Grievance Nos. 42998 and 43432 were in error. Mr. McDougle's criminal charges were not a basis upon which he was classified as an Ad-Seg occupant at the Jail. (Duckert Decl. ¶ 71; Exh. 1005)

73. On October 1, 2021, in response to Mr. McDougle's Grievance No. 43677, Lt. Montano corrected her error and stated the following: "[y]ou were placed on Ad Seg based on information provided to this administration by MPD in regards to threats to assault law enforcement prior to your arrest. Based on the information given, it was the decision of this administration to place you on Ad Seg when you were initial booked in and administration was given enough time to review the reports to decide whether you were to remain on Ad

Seg or be removed from the status. You have since been removed." (Duckert Decl. ¶ 72; Exh. 1005)

74. Cpt. Cunningham, too, responded to Mr. McDougle's appeal of Lt. Montano's corrected response by stating the following: "Occupant McDougle, you were informed that administration received information by MPD regarding threats you made toward law enforcement. . . ." (Duckert Decl. ¶ 73; Exh. 1005)

75. Office Administrator Vinson responded to Mr. McDougle's Grievance Nos. 42998 and 44696 which requested the reason as to why he was house on Administrative Segregation classification status through September 11, 2021. Ms. Vinson replied that Mr. McDougle's Ad-Seg classification was the result of his criminal charges, but she was incorrect. (Duckert Decl. ¶ 74; Exh. 1005)

76. Mr. McDougle's criminal charges did not factor at all into his classification as an Ad-Seg occupant at the Jail. (Duckert Decl. ¶¶ 18, 75)

F. **Mr. McDougle's neither alleges nor complain about a Constitutional violation related to his Ad-Seg classification status.**

77. Mr. McDougle disputes that he threatened to harm any law enforcement officers prior to his arrest on July 29, 2021. (Dep. Tr. Pg. 32, 12-14).

78. The premise of Mr. McDougle's lawsuit is that he believes he should not have been placed on Ad-Seg classification status, at all, and that he should have been classified as a general population occupant at the Jail when he was cleared from his placement on suicide watch. (Dep. Tr. Pg. 33 – 11-25; Pg. 34, 1-21).

79. Mr. McDougle's only complaint about being classified as an Ad-Seg occupant is that he's not a bad person and that he should have been classified as a general population occupant. (Dep. Tr. Pg. 33 – 11-25; Pg. 34, 1-21).

80. Mr. McDougle's time on Suicide Watch at the Jail, from July 31, 2021 through August 4, 2021, does not factor into his claim regarding due process and his classification as an Administrative Segregation occupant. (Dep. Tr. Pg. 35, 1-12).

81. Mr. McDougle's only allegation related to Lt. Emanuele's actions in his due process claim in his lawsuit is that he knew about Cpt. Cunningham's actions in keeping Mr. McDougle classified as an Administrative Confinement occupant at the Jail. (Ex. 1008, Pl. Response to Int. 5).

82. Mr. McDougle discussed with Cpt. Cunningham his classification as an Ad-Seg occupant and Cpt. Cunningham told Mr. McDougle that he received such a classification because MCSO administration "got word from the MPD (Milwaukee Police Department)" that he threatened to assault a police officer. (Ex. 1008, Pl. Response to Int. 6).

83. Mr. McDougle testified that he had anxiety he alleges in his complaint that he suffered as a result of being classified and housed as an Ad-Seg occupant, but when asked about the anxiety he testified only that he should not have been there.

84. The entirety of Mr. McDougle's factual allegations against all Defendants can be discerned from his responses to Defendants' Interrogatories and his Complaint in this case. Mr. McDougle has no additional facts or allegations to add to either his Complaint or his responses to Defendants' Interrogatories. (Dep. Tr. Pg. 22, 20-25; Pg.25, 8-14; ECF 1, Exh. 1008).

Dated at Milwaukee, Wisconsin this 6th day of October, 2023

.

          MARGARET C. DAUN
          Milwaukee County Corporation Counsel

By:    <u>s/ Nelson W. Phillips III</u>
        NELSON W. PHILLIPS III
        Assistant Corporation Counsel
        State Bar No. 1028189
        Counsel for Terina Cunningham, Cassandra Joshua and
        Anthony Emanuele

<u>P.O. Mailing Address</u>:
Milwaukee County Office of Corporation Counsel
901 North Ninth Street, Room 303
Milwaukee, WI 53233
Telephone:    (414) 278-4432
Facsimile:    (414) 223-1249
Email: nelson.phillips@milwaukeecountywi.gov