UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PERNAIL MCDOUGLE,

    Plaintiff,

v.                                  Case No. 21-CV-1447

TERINA CUNNINGHAM, et al.,

    Defendants.

**DEFENDANTS' BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

During the early morning hours of July 29, 2021, Pernail McDougle, ("Mr. McDougle") was wanted for a homicide. (PFOF ¶ 7). At approximately 7:56 a.m., the Milwaukee Police Department ("MPD") notified the Milwaukee County Sheriff's Office ("MCSO") that Mr. McDougle was in the area of the Milwaukee County Jail (the "Jail"), that he was wanted for a homicide committed that morning, and that he had reportedly threatened to "kill until he is caught." (PFOF ¶ 7). MCSO Lieutenant Brandy Lester ("Lt. Lester") received MPD's communications regarding Mr. McDougle and sent a series of emails to MCSO command staff and supervisors working in the Milwaukee County Courthouse and the Jail to warn them of his threat of violence against law enforcement. (PFOF ¶¶ 7-12).

On July 31, 2021, Mr. McDougle arrived at the Jail, charged with First-Degree Intentional Homicide, Burglary of a Dwelling, and Aggravated Battery - Elderly Battery. (PFOF ¶ 13). After spending his first several days on suicide watch, MCSO Lieutenant Cassandra Joshua ("Lt. Joshua") instructed the Jail's Classification Unit to classify Mr. McDougle as an Administrative

1

Segregation ("Ad-Seg") occupant due to his threats of violence against law enforcement prior to his arrest. (PFOF ¶ 19). Ad-Seg custody status, while it is a physical separation of the occupant from general population occupants at the Jail, it is non-punitive and it is based upon the potential safety risk that a Jail occupant presents to other occupants and Jail staff. (PFOF ¶¶ 23, 24, 25). Ad-Seg status also does not require that an occupant's carceral privileges be restricted more than if he or she were classified as a general population occupant. (PFOF ¶ 22). And because Ad-Seg status is reviewed every week by a Classification Captain at the Jail, there exist many opportunities for the occupant to be re-classified upon a showing of a stable pattern of behavior by the occupant. (PFOF ¶ 35).

Mr. McDougle was classified as an Ad-Seg occupant from August 4, 2021 through September 11, 2021, and then re-classified as a general population occupant after he showed a pattern of stable and rule compliant behavior. (PFOF ¶¶ 17, 46, 47). Mr. McDougle believes that his Ad-Seg classification violated his 14th Amendment right to due process because some Jail staff told him he was placed on Ad-Seg status due to his criminal charges. (ECF No. 1 & 8; PFOF ¶¶ 71, 75). However, those statements were made in error, and it is well established that Ad-Seg status is not a mechanism used to punish Jail occupants. (PFOF ¶¶ 22, 72, 73, 75, 76,).

Mr. McDougle was classified as an Ad-Seg occupant for the safety of Jail staff and other occupants because of the threats reported by MPD prior to his arrival at the Jail. Once Mr. McDougle could be trusted to reside at the Jail as a general population occupant he was re-classified as such. (PFOF ¶ 19). Captain Cunningham reviewed Mr. McDougle's Ad-Seg status multiple times and kept him on Ad-Seg status until she was comfortable that he could display consistent safe behavior. (PFOF ¶¶ 39, 40, 43, 44, 46). Lt. Emanuele, on the other hand, had no involvement at all with Mr. McDougle's classification as an Ad-Seg occupant. (PFOF ¶ 20).

Based on the undisputed material facts presented in Defendant's Proposed Findings of Fact, as a matter of law, summary judgment must be granted in favor of the defendants. Fed. R. Civ. P. 56(a).

## STATEMENT OF PROPOSED MATERIAL UNDISPUTED FACTS

Defendants incorporate by reference as if set forth in full herein their Proposed Findings of Fact with supporting Declarations filed contemporaneously herewith pursuant to Fed. R. Civ. P. 56(c)(1)(A) and Civil L.R. 56(b)(1)(C).

## APPLICABLE LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmovant. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. However, "the *mere* existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Liberty Lobby*, 477 U.S. at 247-248 (emphasis in original).

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute is satisfied by pointing to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex*, 477 U.S. at 322–23. "A defendant need not prove a negative

3

when it moves for summary judgment on an issue that the plaintiff must prove at trial," but "need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex*, 477 U.S. at 324). To defeat summary judgment, the non-moving party must come forward with evidence that would be sufficient to support a jury verdict in her favor. *Anderson,* 477 U.S. at 249.

## ARGUMENT

Mr. McDougle's procedural due process claim fails as a matter of law. Mr. McDougle did not suffer a deprivation of a liberty interest that implicated his Constitutional right to due process. His confinement on Administrative Segregation, though physically separate from general population housing units in the Jail, was not significantly challenging or difficult as he enjoyed many of the same privileges he would have had in a general population housing assignment. Nor does Mr. McDougle allege any conditions of confinement of Administrative Segregation that caused him to suffer any type of atypical hardships at the Jail. In short, Mr. McDougle's claim does not implicate his Constitutional right to procedural due process as a pretrial occupant.

Further, the undisputed facts establish that Jail administration classified Mr. McDougle as an Administrative Segregation occupant because of a credible inter-agency law enforcement report that threatened to kill a law enforcement officer prior to his arrest on July 29, 2021. Once he was booked into the Jail and based upon the knowledge of Mr. McDougle's prior threats, Lt. Joshua (and later Captain Cunningham) took precautions to ensure the safety and security of Jail staff and other occupants at the Jail by placing Mr. McDougle under closer scrutiny in Administrative Segregation. Mr. McDougle was not classified as an Ad-Seg occupant as a punishment.

4

Mr. McDougle may argue that he doesn't recall making any threats of violence toward law enforcement, and both MPD and the MCSO claimed not to possess any such report of the threats. But the facts are undisputed that MCSO Jail and Courthouse staff were on high alert on July 29, 2021 to be aware of Mr. McDougle because of the reported threats, and it is unequivocal that emails were sent throughout MCSO administrative staff as a result of Mr. McDougle's reported threats. Mr. McDougle's arrival at the Jail on July 31, 2021 necessitated further observation on Administrative Segregation to ensure that he was a good risk to reside in a general population setting.

Mr. McDougle suffered no harm, too, as a result of his classification as an Ad-Seg occupant. Though he alleges that he experiences anxiety as a result of his Ad-Seg status, there is no evidence to substantiate any damages. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citation omitted). Because such is the case here summary judgment is warranted in favor of the Defendants. *See* Fed. R. Civ. P. 56.

## I. Mr. McDougle did not suffer a due process deprivation.

To prevail on his Fourteenth Amendment procedural due process claim, Mr. McDougle must prove that he suffered (1) a deprivation of a protected liberty or property interest; and (2) the absence of constitutionally adequate procedural safeguards in connection with the alleged deprivation. *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 870 (7th Cir. 2009). "Whether a prisoner has a liberty interest implicated by special confinement relies on whether the confinement imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013), citing *Sandin v. Conner,* 515 U.S. 472, 484 (1995).

The Supreme Court in *Sandin v. Conner*, 515 U.S. 472 (1995) held that states may create liberty interests in general population confinement only if the conditions of confinement in segregation are significantly more restrictive. *Sandin v. Conner*, 515 U.S. 472, 485-86 (1995). In making this determination, the Court determined that, (1) the occupant's confinement (in that case) in disciplinary segregation mirrored conditions of administrative segregation and other forms of discretionary confinement; (2) based on a comparison between inmates inside and outside segregation, the state's action in placing him there for 30 days did not work a major disruption in the occupant's environment; and (3) the state's action did not inevitably affect the duration of occupant's sentence. *Id*.

When the *Sandin* factors are applied to Mr. McDougle's claim, it becomes clear that there is no evidence that Mr. McDougle's Ad-Seg confinement at the Jail was demonstrably different than his confinement in general population. There is no evidence to support an argument that the conditions of Mr. McDougle's Ad-Seg confinement were atypical or significantly more challenging than his general population confinement or that he suffered any significant injuries or damages as a result of his Ad-Seg confinement. (PFOF ¶¶ 27-31). In fact, Mr. McDougle's general population cells had the same accoutrements as his Ad-Seg housing units on Pods 4B and 4D. (PFOF ¶¶ 28). Ad-Seg occupants, like general population occupants at the Jail, are permitted to use the telephones located in 4D and 4B to call anyone they choose (unless restricted by a Court's order), they are permitted full mail and video visitation privileges, and they are permitted access to hygiene items on the commissary list. (PFOF ¶31). By contrast, occupants on disciplinary confinement status at the Jail are not permitted to access any commissary items, they aren't permitted telephone or video visits, and their time out of their cell is more restricted than occupants classified as Ad-Seg. (PFOF ¶ 32). As a result, there is no evidence that Mr. McDougle's

administrative confinement served as a major disruption in his overall confinement at the Jail, either. See *Sandin*, 515 U.S. at 485-86.

Finally, Mr. McDougle does not allege that the length of Mr. McDougle's eventual sentence was affected by his time on Ad-Seg status, and there is no evidence to suggest such a concept. Further, the period of time that Mr. McDougle spent in Administrative Segregation, 37 days, was reasonably short so as to determine whether he posed a risk to Jail staff or occupants in general population given the reported threats of violence he made against law enforcement. *See Marion v. Columbia Correction Inst.*, 559 F.3d 693, 698 (7th Cir. 2009) ("[S]ix months of segregation is not such an extreme term and, standing alone, would not trigger due process rights."), citing *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995); *see also Lekas v. Briley,* 405 F.3d 602, 612 (7th Cir.2005) (up to 90 days in segregation ". . . still not so long as to work an atypical and significant hardship.").

Because Mr. McDougle's Ad-Seg confinement did not deprive him of a protected liberty interest, the analysis does not progress to whether he was afforded constitutionally adequate procedural safeguards in connection with the deprivation. Mr. McDougle did not experience a deprivation via his classification as an Ad-Seg occupant, and no process was required.

**II.    Mr. McDougle was classified as an Ad-Seg occupant to ensure safety and security of Jail staff and occupants.**

Maintaining jail security is an appropriate justification for placing non-punitive restrictions on pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 540 (1979). Non-punitive administrative segregation of a pretrial detainee does not violate the constitution, nor does it require the government to first provide due process protections. *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) (no due process is required if pretrial detainee is placed in segregation "not as punishment but for managerial reasons"); *Zarnes v. Rhodes*, 64 F.3d 285, 291–92 (7th Cir. 1995) (no

7

Constitutional violation for placing a pretrial detainee in administrative segregation for their protection and that of other inmates without due process).

An action taken against a pretrial detainee constitutes unlawful punishment *only if* it is (1) motivated by intent to punish; (2) not reasonably related to a non-punitive purpose such as maintaining security and order; or (3) an exaggerated response to that interest. *Bell v. Wolfish* 441 U.S. at 538; *Rapier*, 172 F.3d at 1005. In making this determination, courts should defer to the expertise of prison officials unless it is clear that they have overreacted. *Bell*, 441 U.S. at 548.

The Jail is obligated to maintain order and safety, and the *Bell* Court emphasized that "maintaining institutional security and preserving order and discipline are essential goals" of a correctional facility. *Bell*, 441 U.S. at 546-47. Indeed, the failure of Jail administration to take preventative steps to ensure the safety of the facility could also give rise to suits against the Jail, some even with merit. *See Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002).

Mr. McDougle's allegations, even taken in the light most favorable to him, do not spell out an actionable due process claim because no process is required when he was classified as an Ad-Seg occupant for managerial reasons and not punishment. *Bell v. Wolfish,* 441 U.S. at 535–41. The undisputed facts show that on July 29, 2021, the MCSO received information from the Milwaukee Police Department that Mr. McDougle was wanted for a homicide that morning, that he threatened to "kill a cop," and that he was in the area of the Milwaukee County Jail. (PFOF ¶¶ 7, 8). As a direct result of the reported threat, MCSO Lt. Brandy Lester sent emails to update MCSO Courthouse and Jail command staff and administration warning them of the threat posed by Mr. McDougle in case they encountered him. (PFOF ¶¶ 7-12). Lt. Joshua was part of the email distribution list and, as a direct result of the communicated threat, instructed Classification Unit CO Kelle Honzik to classify Mr. McDougle as an Ad-Seg occupant. (PFOF ¶ 19). Mr. McDougle

was reviewed on weekly basis to determine whether he could be re-classified based only on his ability to consistently display a pattern of behavior compliant with Jail rules and safety. (PFOF ¶¶ 35, 38-40, 42, 43-46). Approximately thirty-Seven days after he was classified as an Ad-Seg occupant, Cpt. Cunningham determined that Mr. McDougle could be removed from Ad-Seg classification status and he was re-classified as a general population occupant. (PFOF ¶ 46).

The evidence is clear that Lt. Joshua and Cpt. Cunningham used Administrative confinement as a managerial classification tool, which it is, to manage a potential threat to the safety of Jail staff and other occupants – a clear, non-punitive purpose. *Higgs v. Carver*, 286 F.3d 437, 438 (2002), citing *Bell v. Wolfish,* 441 U.S. 520, 535–41 (1979). Mr. McDougle was not deprived of any substantive due process rights and the Defendants deserve summary judgment on this issue.

### III. Defendants are Entitled to Qualified Immunity

Summary judgment is also appropriate because the Defendants are entitled to qualified immunity. "To determine whether a defendant is entitled to qualified immunity, courts must address (1) whether the defendant violated the plaintiff's constitutional rights and (2) whether the right at issue was clearly established at the time of the violation." *Stainback v. Dixon*, 569 F.3d 767, 770 (7th Cir. 2009), citing *Phelan v. Vill. of Lyons*, 531 F.3d 484, 487 (7th Cir. 2008). The doctrine of qualified immunity gives government officials "the benefit of legal doubts." *Rooni v. Biser*, 742 F.3d 737, 743 (quoting *Elliott v. Thomas*, 937 F.2d 338, 341 (7th Cir. 1991)). The defense provides "ample room for mistaken judgments" and protects all but the "plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986))[1].

---

[1] *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015) was not decided in 2015 at the time of the events alleged in the Complaint.

Mr. McDougle cannot establish that the Defendants violated his Constitutional rights to due process. This fact alone warrants dismissal of his claim. Yet, even if Mr. McDougle could prove that his Constitutional rights were implicated (or even violated), he must present a "closely analogous case that establishes that the Defendants' conduct was unconstitutional" or "evidence that the Defendant's conduct was so patently violative of the constitutional right that reasonable officials would know without guidance from a court" to defeat the qualified immunity defense. *Estate of Escobedo v. Bender*, 600 F.3d 770, 780 (7th Cir. 2010) (citation omitted). He cannot do so here where his time on Administrative Segregation was warranted and the MCSO's legitimate penological interests in classifying him as an Ad-Seg occupant are clear.

### IV. Defendant Anthony Emanuele must be dismissed from Mr. McDougle's Complaint.

"The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citation omitted). Without this showing, a supervisory official cannot be held liable. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). Despite § 1983's requirement to state a claim for individual liability, there is no evidence that Lt. Emanuele was personally involved in the alleged deprivation of his Constitutional rights. Thus, Lt. Emanuele must be dismissed from his suit. *See Whitford v. Boglino*, 63 F.3d 527, 530-31 (7th Cir. 1995).

While Mr. McDougle's Complaint alleges that Lt. Emanuele in some fashion to place him "in Administrative Segregation without probable cause . . . ," the evidence in this case is clear that Lt. Emanuele was not even tangentially involved in Mr. McDougle's classification status at any time during the entirety of his confinement at the Jail, and he did not have any connection with the decisions related to his Ad-Seg classification and assignment to Pods 4B or 4D. (PFOF ¶¶ 20). Lt.

10

Emanuele, then, must be dismissed as having no causal connection or affirmative link to the alleged misconduct. *Sonquist*, 699 F.2d at 869.

## CONCLUSION

For the foregoing reasons, Defendants respectfully moves for summary judgment dismissing Plaintiff's complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56 of the Eastern District of Wisconsin's Local Rules.

Dated at Milwaukee, Wisconsin this 6th day of October, 2023.

MARGARET C. DAUN
Milwaukee County Corporation Counsel

By:  s/ *Nelson W. Phillips III*
NELSON W. PHILLIPS III
Wisconsin Bar No. 1028189
Assistant Corporation Counsel
Attorney for Defendants Steven Haw, Pedro Ruiz, and Lance Olson

P.O. Mailing Address:
Milwaukee County Office of Corporation Counsel
901 North 9th Street, Room 303
Milwaukee, WI 53233
Telephone: (414) 278-4300
Facsimile: (414) 223-1249
Email: nelson.phillips@milwaukeecountywi.gov