UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**PERNAIL MCDOUGLE,**

    Plaintiff,

v.                                                Case No. 21-cv-1447

**TERINA CUNNINGHAM,** *et al.*,

    Defendants.

### ORDER

    Plaintiff Pernail McDougle, who is representing himself and currently confined at Green Bay Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. (ECF No. 1.) McDougle was allowed to proceed on a Fourteenth Amendment due process claim for the time he spent as a pretrial detainee in administrative segregation at Milwaukee County Jail. The defendants filed a motion for summary judgment. (ECF No. 34.) The motion is fully briefed and ready for a decision. For the reasons stated below, the court grants the defendants' motion for summary judgment.

### FACTS

*Parties*

    At all times relevant, McDougle was a pretrial detainee at the Milwaukee County Jail. (ECF No. 35, ¶ 1.) On July 29, 2021, non-defendant Lieutenant Brandy Lester, who worked for the Milwaukee County Sheriff's Office, sent an email to

various Sheriff's Office Courts Division personnel stating that McDougle was wanted for a homicide that happened that morning and that "he made statements that he will continue to kill until he is caught." (*Id.*, ¶ 7.) Shortly thereafter, Lester sent another email to the Sheriff's Office's Law Enforcement Analytics Division stating, "MPD notified us that there is a suspect in our area that wants to 'kill a cop'." (ECF No. 35, ¶ 8.) Lester then forwarded both her emails to all Sheriff's Office investigative divisions, supervisors, and command staff at the Milwaukee County Courthouse and the Jail. (*Id.*, ¶ 9.) Some time after that, Lester sent a final update to all these groups that McDougle had been taken into custody. (*Id.*, ¶ 12.) McDougle asserts that Lester fabricated these facts for "some unknown reason", but he does not offer proof that the emails were fabricated other than his own belief. (ECF No. 51, ¶¶ 7, 11.)

On July 31, 2021, McDougle was booked into the Jail (ECF No. 35, ¶ 13.) During booking, Wellpath, Inc., the Jail's contracted healthcare provider, evaluated McDougle and determined that he "was an 'imminent threat of physical injury to himself'". (*Id.*, ¶ 14.) As a result, McDougle has placed on "suicide watch" and housed in the observation wing of the Jail. (*Id.*, ¶ 15.)

On August 4, 2021, McDougle was cleared from suicide watch. (ECF No. 35, ¶ 16.) The Jail's Classification Unit then determined the appropriate housing assignment for McDougle. (*Id.*) Non-defendant Corrections Officers Kelle Honzik, who was a part of the Classification Unit, classified McDougle as "an Administrative Segregation (Ad-Seg) occupant." (*Id.*, ¶ 17.) She determined that Ad-Seg was appropriate for McDougle after she spoke with defendant Lt. Cassandra Joshua that

2

same day. (*Id.*, ¶ 18.) Joshua informed Honzik that McDougle had made threats to kill police officers the day of his arrest, and Joshua instructed Honzik to classify McDougle as Ad-Seg because he was a safety threat to Jail staff and other prisoners. (*Id.,* ¶¶ 18-19.) McDougle asserts that he was initially classified as Ad-Seg because of the false claims that he threatened to kill a cop and because he was charged with homicide. (ECF No. 51, ¶¶ 16, 21.) The defendants acknowledge, for the purposes of summary judgment, that during the grievance process, McDougle was erroneously informed by two non-defendant Jail staff members that he was placed in Ag-Seg because of his homicide charge. (ECF No. 54 at 10.) However, McDougle was subsequently informed that he was told wrong information by those officers. (*Id.*)

McDougle was on Ad-Seg status from August 4, 2021, through September 11, 2021, or 35 days. (ECF No. 35, ¶ 2.) During his time on Ad-Seg, McDougle asserts that he "was not permitted as much out-of-cell time as general population occupants." (ECF No. 51, ¶ 32.) However, he does not detail any other conditions he faced while on Ad-Seg.

During the 35-day period, McDougle's Ad-Seg status was reviewed weekly; in McDougle's case, 5 times. (ECF No. 35, ¶¶ 35-45.) Defendant Captain Terina Cunningham was the Classification Captain, and her responsibilities included reviewing the classification of prisoners who were classified as Ad-Seg. (*Id.*, ¶ 36.) During the first few reviews of his status, it was decided to keep McDougle in Ad-Seg until McDougle showed "stable behavior to be removed" and placed into general population. (*Id.*, ¶ 39.) Half-way through his stay on Ad-Seg, McDougle violated a Jail

3

rule and used the telephone pin of another prisoner. (*Id.*, ¶ 41.) This violation led the Classification Committee to determine that his behavior was not yet stable and safe enough for general population. (*Id.*, ¶¶ 42-43.) On September 9, 2021, non-defendant Christopher Kindschi interviewed McDougle to review his Ad-Seg status. (*Id.*, ¶ 45.) As a result of this interview, it was determined that McDougle was likely to follow Jail rules and that he demonstrated "stable behavior." (*Id.*, ¶ 46.) On September 11, 2021, McDougle was placed into general population. (*Id.*, ¶ 47.)

As for defendant Anthony Emanuele, McDougle admits that he had nothing to do with the classification process, but that he knew about Cunningham's decision to keep him in Ad-Seg. (ECF No. 35, ¶ 81.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

4

(1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

McDougle claims that the defendants violated his Fourteenth Amendment due process rights by placing him in Ad-Seg for 35 days. "To establish a due process violation, [a plaintiff] needed to present evidence that the defendants deprived him of a liberty interest by 'imposing an atypical and significant hardship on him in relation to the ordinary incidents of prison life.'" *McCoy v. Atherton*, 818 Fed. App'x 538, 541 (7th Cir. 2020) (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). In the case of pretrial detainees, "[a] condition of confinement may be imposed . . . without violating the due process clause if it is reasonably related to a legitimate and non-punitive governmental goal; it may not be arbitrary or purposeless." *Riker v. Carlson*, Case No. 10-C-906, 2012 WL 2885930 at * 4 (E.D. Wis., July 13, 2012) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996)). "Safety and preventing

5

danger to the community are legitimate governmental goals that outweigh an individual's liberty interest, depending on the circumstances." *Id.* "A pretrial detainee has a right to due process before conditions or restrictions are imposed upon him only if those restrictions or conditions amount to punishment of the detainee." *Id.* (citing *Bell v. Wolfish*, 411 U.S. 520, 536 (1979)).

No reasonable factfinder could conclude that McDougle's placement on Ad-Seg was a punishment or that it was not in pursuit of a legitimate governmental goal. Whether or not Lester had a basis for sending the emails communicating that McDougle wanted to kill a cop, McDougle has not presented evidence that demonstrates the defendants acted unreasonably in taking Lester's emails at face value and placing him in Ad-Seg for the safety of the Jail community. Additionally, other than his own belief that Lester fabricated those facts, McDougle does not demonstrate that Lester's information was false or fabricated, which is insufficient to defeat summary judgment. *See Drake v. Minn Mining & Mfg Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (Bald assertions that are not bolstered by more specific evidence are insufficient to create a genuine issue of material fact.) Thus, the defendants, in preserving the Jail community's safety and security, had a legitimate reason to place McDougle in Ad-Seg.

Even if McDougle could demonstrate that his placement in Ad-Seg was punitive, he does not establish that he had a liberty interest. Placement in segregation may create a liberty interest "if the length of segregated confinement is substantial and the record reveals the conditions of confinement are unusually

6

harsh." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). Thirty-five days is not a substantial stay in segregation, and McDougle presents no evidence that he suffered unusually harsh conditions. *See Sandin,* 515 U.S. at 486 (short-term placements in segregation do not trigger liberty interest); *Townsend v. Fuchs*, 522 765, 766 (7th Cir. 2008) (two months in segregation does not deprive an inmate of a liberty interest); *Beamon v. Pollard*, 711 Fed. Appx. 794, 795 (7th Cir. 2018) (135 days does not deprive an inmate of a liberty interest).

And, even if McDougle could prove he had a liberty interest, he'd be entitled only to "information non-adversarial [and] periodic review of the confinement." *Riker*, 2012 WL 2885930 at * 4 (citing *Alston v. DeBruyn*, 13 F.3d 1036, 1042 (7th Cir. 1994)). It is undisputed that McDougle got the requisite amount of due process. His status as an Ad-Seg occupant was reviewed weekly. Because no reasonable factfinder could conclude that the defendants violated McDougle's due process rights, summary judgment is granted in their favor.

## CONCLUSION

For the foregoing reasons, the court grants the defendants' motion for summary judgment. The defendants also argued that they were entitled to qualified immunity. Because the court grants summary judgment in their favor on the merits, the court does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER
7

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 34) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 24th day of May, 2024.

STEPHEN DRIES
United States Magistrate Judge